GLOBAL VAN LINES, INC., Wheaton Van Lines, Inc. and Allied Van Lines, Inc., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

Nos. 82–4099, 82–4124 and 82–4158.

United States Court of Appeals, Fifth Circuit.

May 12, 1983.

Rehearing Denied July 5, 1983.

Alan F. Wohlstetter, Stanley I. Goldman, Washington, D.C., for petitioners.

Jane Lind Downey, Arlington, Va., for American Movers Conf., intervenor.

Laurence H. Schecker, I.C.C., Washington, D.C., for I.C.C.

Robert B. Nicholson, William J. Roberts, Dept. of Justice, Washington, D.C., for U.S.

Ernest E. Gallego, Ronald L. Hartman, Glendale, Cal., for Bekins Van Lines, Co., intervenor.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Reduced administrative regulation of industry and the consequent creation of competition among those previously sheltered from price rivalry may damage those firms who had accommodated their business activities to the rigidity of regulation and the attendant benefit of protection from economic strife. Businesses who are thus forced into the competitive storm seek refuge in the argument that Congress did not intend to permit the administrative agency to go so far in relaxing governmental controls. Here, common motor carriers of household goods object to the Interstate Commerce Commission's sanction of contract carrier authority to competing household goods carriers, which will permit those competitors to give service and price concessions to large shippers. Concluding that the Commission acted within the scope of the authority given it by statute, we decline to vacate its orders.

## I.

Congress changed the course of regulation of the motor carrier industry when, on July 1, 1980, it enacted the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980), 49 U.S.C.S. § 10101 *et seq.* (Law. Coop.Supp.1982). The new legislation made substantial changes in the definition of contract carriers of property and in the Commission's criteria for determining contract carrier applications.[1] As we noted in *Alamo Express, Inc. v. ICC,* 673 F.2d 852, 854 (5th Cir.1982), the Act was intended "to reduce unnecessary federal regulation and to remove regulatory inhibitions to market entry and carrier growth in the trucking industry" and "to promote competitive and efficient motor transportation services." In addition to other changes, the Motor Carrier Act lifts a number of the restrictions on the operations of motor contract carriers of property in an effort to make that segment of the industry more competitive. The Act defines a motor contract carrier as a person providing motor transportation under a continuing agreement that either assigns motor vehicles for a continuing period of time or is "designed to meet the distinct needs" of the shipper.[2] Corollary to this expansion

---

1. Prior to the Motor Carrier Act of 1980, motor contract carriers of property had to demonstrate that they would dedicate their equipment to the exclusive use of the supporting shippers or that their proposed service was designed to meet the shippers' distinct needs. The Commission considered whether the grant of authority was consistent with the national transportation policy, 49 U.S.C.S. § 10101 (Law. Coop.Supp.1982), by evaluating (1) the number of shippers to be served by the carrier, (2) the nature of the proposed transportation, (3) the effect that a grant of authority would have on the protesting carriers, (4) the effect that a denial of authority would have on the applicant or the supporting shipper(s), and (5) the changing character of the supporting shipper's transportation requirements. For many years the Commission interpreted the "number of shippers" criterion to mean that a contract carrier could not serve more than eight shippers. This interpretation was eliminated in Ex Parte No.

MC–119, *Policy Statement Regarding the "Rule of Eight" In Contract Carrier Application,* 44 Fed.Reg. 2470 (1979), *petition for review denied sub nom., Regular Common Carrier Conference v. United States,* 628 F.2d 248 (D.C.Cir.1980), in which the Commission stated that it would no longer apply rigid numerical tests in evaluating contract carrier applications.

2. 49 U.S.C.S. § 10102(13)(B) (Law.Coop.Supp. 1982) provides:

> (13) "motor contract carrier" means—
>
> \* \* \* \* \* \*
>
> (B) a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—
>
> (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or
>
> (ii) designed to meet the distinct needs of each such person.

of contract carriage, the Act provides a means by which motor common carriers can challenge the *bona fides* of a contract carrier's operations. Shortly thereafter, Congress enacted the Household Goods Transportation Act of 1980, Pub.L. No. 96–454, 94 Stat. 2011 (1980), 49 U.S.C.S. § 10101 *et seq.* (Law.Coop.Supp.1982). The House report on the final version of the Household Goods Act stated, "the provisions of the Motor Carrier Act of 1980 apply to the moving industry in these areas." H.R.Rep. No. 96–1372, 96th Cong., 2d Sess. 3 (1980), U.S.Code Cong. & Admin.News 1980, pp. 4271, 4273.

This consolidated proceeding seeks review of three decisions of the Commission—Bekins Van Lines Co., Extension—Babcock & Wilcox Company Contract Carriage (Sub-No. 71), Bekins Van Lines Co., Extension—Heublein, Inc., Contract Carriage (Sub-No. 77), and Bekins Van Lines Co., Extension—Household Goods (Sub-No. 84)—in which the Commission affirmed awards to Bekins of contract carrier authority to serve the three named shippers of household goods.

In each proceeding, Bekins seeks to perform contract carriage of household goods for a named industrial customer. The application to serve Babcock & Wilcox (Sub-No. 71) is typical. Babcock & Wilcox has a large number of employees and it frequently reassigns employees to new duty posts. Bekins recites in its application that the frequency and diversity of its employee and personnel moves invariably require on-the-spot service not presently available by common carrier, particularly during the seasonal peaks that are characteristic of the household goods carriage industry. Bekins proposes to guarantee "on-the-spot" servicing of Babcock & Wilcox's moves, including the transportation and incidental services connected with individual moves of employees, agents, and officers. Bekins also has a common carrier certificate. It proposes to commingle, for transportation to a common point, traffic transported under its common carrier certificate with traffic transported under the proposed contract carrier permit.

The Commission's Review Board Number 2 reviewed Babcock & Wilcox's "particularized service needs" and its general dissatisfaction with the available common carriers. The Board found that the proposal constitutes contract carriage within the meaning of 49 U.S.C. § 10102(13)(B).[3] It noted, "The volume and frequency of Babcock & Wilcox's service needs call for a carrier commitment beyond that of the on-time performance required of common carriers in general and guaranteed scheduled service of household goods carriers under 49 U.S.C. § 10734(b)."[4] It concluded that the Bekins proposal was in the public interest and should be granted. It reached similar decisions in Sub-No. 77, proposing contract service for Heublein, and in Sub-No. 84, proposing contract service for Northern Telecom.

---

**3.** *See supra* note 2 for the text of this provision.

**4.** 49 U.S.C.S. § 10734(b) (Law.Coop.Supp. 1982) reads:

(b)(1) Subject to the provisions of paragraph (2) of this subsection, a motor common carrier providing transportation of household goods subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title [49 USC §§ 10521 et seq.] may, subject to the provisions of this chapter (including the general tariff requirements of section 10762 of this title [49 USC § 10762]), establish rates for the transportation of household goods which guarantee that the carrier will pick up and deliver such household goods at the times specified in the contract for such services and provide a penalty or per diem payment in the event the carrier fails to pick up or deliver such household goods at the specified time. The charges, if any, for such guarantee and penalty provision may vary to reflect one or more options available to meet a particular shipper's needs but must be contained in the tariff the carrier publishes for such services under this title [49 USC §§ 1 et seq.].

(2) Before a carrier may establish a rate for any service under paragraph [1] of this subsection, the Commission may require such carrier to have in effect and keep in effect, during any period such rate is in effect under such paragraph, a rate for such service which does not guarantee the pick up and delivery of household goods at the times specified in the contract for such services and which does not provide a penalty or per diem payment in the event the carrier fails to pick up or deliver household goods at the specified time.

In each proceeding, the Board found that Bekins does not propose to offer common carriage with preferential service features. It found the proposed service to be a premium service at a discount rate. The Commission explained in detail why, in its opinion, the proposals satisfy the distinct needs test of contract carriage under the statute. The only question before us is whether the Commission properly found that Bekins's service proposals meet the "distinct needs" test of contract carriage. The petitioners contend that the Commission's decisions are arbitrary and capricious, that the proposals are but a disguised form of common carriage, designed to give volume shippers preference in service at discounted rates, and that the shippers have no needs distinct from those of the general public.

The distinct needs test is not historical and fixed. It must be applied to changing transportation needs. The Commission explained that large corporate shippers, such as Babcock & Wilcox, have household goods transportation needs different from those of an individual shipper. It found that these large-volume shippers require responsive, on-time service adapted to meet the changing business demands of frequent and diverse moves of employees, agents, and officers, and that this constitutes a specialized service requirement. "On-the-spot" volume service, offering shippers favored status with regard to service quality, scheduling, and responsiveness, meets those needs. In addition, the Commission said, the Bekins proposal to provide lower rates for such shipments was one additional factor leading it to conclude that the service proposed is contract carriage, meeting the statutory test.

■ The evidence supporting the Commission's findings is not preponderant. Indeed, a skeptical evaluator might conclude that Bekins's proposals are difficult to distinguish from what the petitioners label them: contracts to provide preferential service at a reduced rate. But we are not charged with administration of the Act. Congress has delegated that function to the Commission. Our review of Commission decisions licensing motor contract carriers is narrowly confined. *Alamo Express, Inc.,* 673 F.2d at 856; *Benmar Transport & Leasing Corp. v. ICC,* 623 F.2d 740, 743 (2d Cir.1980); *International Detective Service, Inc. v. ICC,* 613 F.2d 1067, 1073 & n. 13 (D.C.Cir.1979). The concepts underlying motor contract carriage—dedication of equipment, distinct needs, public interest, and service of the national transportation policy—are not defined by the statute. The Commission is given broad discretion to define these terms and "to draw its conclusions from the infinite variety of circumstances which may occur in specific instances." *ICC v. Parker,* 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed.2d 2051, 2059 (1945). We determine only whether the agency's findings and conclusions are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (1976), or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E) (1976). *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447, 455 (1974); *Alamo Express, Inc.,* 673 F.2d at 856.

■ The Commission decisions that the Bekins proposals are designed to meet the distinct needs of the shippers are not, on the record as a whole, either arbitrary or irrational. The argument that the needs of the three shippers are ordinary, common to household goods shippers in general, and not different, more select or more specialized needs, was considered. The Commission found that the shippers require responsive service with on-time performance to a greater degree than the general public. It found that they make frequent and diverse moves of their employees, officers, and agents. It found that they have a particular need for notification of shipments, careful handling, and exact scheduling of shipments. It has drawn fine lines, distinguishing what we would, perhaps, have considered similarities, but its function is to make precisely this kind of decision, and ours is limited to review for arbitrariness.

In *ICC v. J–T Transport Co.*, 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961), the Supreme Court stated that the distinct needs test is satisfied if the applicant shows that a shipper requires "a different or a more select or a more specialized service" than the protesting carriers provide. *Id.* at 91, 82 S.Ct. at 210, 7 L.Ed.2d at 155. So long as the shipper's need is shown to be distinct in that sense and the applicant's service is designed to satisfy the need, it is irrelevant whether petitioners' existing services are reasonably adequate. *Id.; International Detective Service, Inc.*, 613 F.2d at 1076.

In the face of Congress's directive to open up competition in the motor carrier industry, *see Alamo Express, Inc.*, 673 F.2d at 854, the Commission was empowered to entertain new and innovative service proposals by all sorts of carriers. Prior to 1980, there were no household goods contract carriers, although some household goods common carriers did perform contract carriage of commodities other than household goods. However, Congress has made it clear that the relaxed entry provisions of the Motor Carrier Act apply to household goods carriers. H.R.Rep. No. 96–1372, 96th Cong., 2d Sess. 3 (1980), quoted *supra,* at 831. Thus, when Bekins, an established common carrier of household goods, sought contract carrier authority to transport household goods, the Commission was not restrained by statute from approving the new proposal.

The petitioners attempted to introduce into the Commission review proceedings copies of documents prepared by Bekins for distribution to its district managers concerning its proposed program for contract carriage of household goods. The Commission refused to consider these documents on the ground that they were not relevant to its determination. The petitioners argue that these documents show that Bekins does not propose to offer specialized service contracts, but only open-ended volume discounts. They contend that the Commission abused its discretion by refusing to admit the proffered evidence, and they urge us not to repeat that mistake. The Commission responds that its proceedings are not intended to evaluate Bekins's contracts for compliance with statutory and administrative requirements,[5] so the documents were not pertinent to its inquiry. Bekins denies that the documents foretell the contents of its contracts; it intends to tailor its contracts to the needs of each shipper. We agree with the Commission that these proceedings to determine whether Bekins's applications should be granted ought not to be turned into a prospective review of Bekins's adherence to the requirements of contract carriage. *See International Detective Service, Inc.*, 613 F.2d at 1076 (permit proceeding is not to be turned into full-fledged rate proceeding).

Should the operations under these proposals prove to be but common carriage in faint disguise, affording preferential treatment or rates to only a few shippers, they may be challenged. Pursuant to 49 U.S.C.S. § 10925(e) (Law.Coop.Supp.1982),[6]

---

**5.** The petitioners assert particularly that the documents show that Bekins will not fulfill the requirements of 49 C.F.R. § 1053.1 (1981). That regulation reads:

No contract carrier by motor vehicle, as defined in 49 U.S.C. 10102(12) shall transport property for hire in interstate or foreign commerce except under special and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments, and

copies of which contracts or agreements shall be preserved by the carriers parties thereto so long as such contracts or agreements are in force and for at least one year thereafter.

**6.** 49 U.S.C.S. § 10925(e) (Law.Coop.Supp.1982) provides:

On application of a motor contract carrier of property who holds a permit issue under section 10923 of this title [49 USC § 10923], or on complaint of a competing motor common carrier of property who holds a certificate under section 10922(b) of this title [49 USC § 10922(b)], or on its own initiative, if the Commission, after notice and an opportunity

enacted as part of the Motor Carrier Act, a competing common carrier can file a complaint with the Commission alleging that a contract carrier's operations "do not conform with the operations of a motor contract carrier of property . . . and . . . are those of a motor common carrier of property." This complaint proceeding is separate from the application proceeding for contract carrier authority, and is the proper method by which household goods common carriers can assert that a contract carrier is not actually operating as a contract carrier. A competing common carrier also has the option of filing a complaint with the Commission pursuant to 49 U.S.C. § 11701(b) (Supp.III 1979) [7], an older provision of the Interstate Commerce Act, for a contract carrier's violation of the Motor Carrier Act or the Household Goods Transportation Act when providing transportation or service subject to the Commission's jurisdiction.

In such a proceeding, the actual contracts between Bekins and the contracting shippers can be introduced into evidence, and the petitioners can address whether Bekins's contracts comply with the requirements of 49 C.F.R. § 1053.1 (1981).[8] The petitioners have expressed doubt that they would be able to acquire copies of Bekins's contracts if they challenged Bekins's operations as a contract carrier. They point out that motor carrier contracts are not required to be filed with the Commission, and that the Commission may choose not to make them publicly available. In addition,

the Commission may choose not to authorize discovery of the contracts in any administrative proceedings. The Commission responds that it will allow such discovery, should future proceedings be instituted, and acknowledges that it will be bound by this concession. That is enough to assure the petitioners that, should need arise, the documents can be discovered.

## II.

For these reasons, the petitions for review are DENIED.

---

for a proceeding, determines that the operations under the permit or any part thereof—
(A) do not conform with the operations of a motor contract carrier of property; and
(B) are those of a motor common carrier of property;
the Commission may amend or revoke such permit or part thereof to conform the operations under such permit or part thereof to the operations of a motor contract carrier of property.
(2) The Commission may issue in place of any permit or part thereof revoked under this subsection a certificate under section 10922(b) of this title [49 USC § 10922(b)] which authorizes the holder of such certificate to provide transportation as a motor common carrier of property of the same property between the same points or within

the same territory as authorized in the permit or part thereof.

7. 49 U.S.C. § 11701(b) (Supp.III 1979) provides:

A person including a governmental authority, may file with the Commission a complaint about a violation of this subtitle by a carrier providing, or broker for, transportation or service subject to the jurisdiction of the Commission under this subtitle. The complaint must state the facts that are the subject of the violation . . . . The Commission may dismiss a complaint it determines does not state reasonable grounds for investigation and action.

8. *See supra* note 5.